GEORGE W. RIGGS et al., Respondents, *v.* JAMES PURSSELL et al., Appellants.

(Argued April 26, 1882 ; decided May 5, 1882.)

THIS was an action to foreclose a mortgage.

In the spring of 1873 defendant Purssell conceived the project of building in the city of New York a theatre, upon land owned by him, which, when completed, was to be leased for a term of years to William Stuart, a theatrical manager. Dion Boucicault, an actor and theatrical writer, a friend of Stuart, also became interested in the project and agreed to loan Purssell $20,000 to aid him in building the theatre. Afterward Boucicault, not being able or ready to loan the money, it was arranged that the plaintiffs should make the loan. For the purpose of consummating the arrangements Purssell, Boucicault

and Stuart, on the 9th day of May, 1873, met at the office of an attorney in the city of New York, and there Purssell executed and delivered to Stuart a lease of the theatre to be erected, for a term of years at a stipulated rent. As the plaintiffs desired the personal security of Boucicault for the loan, it was arranged that a bond and mortgage should be executed to him and then assigned by him to the plaintiffs; and a bond and mortgage were so executed, to secure the payment of the $20,000, and they were assigned by Boucicault to the plaintiffs with his guaranty of payment thereon. At the same time Purssell executed and delivered to the plaintiffs a declaration in which he declared that he had "no legal or equitable defenses, offsets, or counter-claims against the said bond and mortgage, or against the payment of the sum therein and thereby secured, or any part thereof, with the interest at the times and in the manner therein stipulated;" and it was recited in the declaration that it was executed for the purpose of inducing the plaintiffs to accept the assignment of the bond and mortgage, and to pay the consideration money for such assignment. At the same time Purssell assigned to the plaintiffs, as collateral security for the payment of the bond and mortgage, all the rents reserved in the lease to Stuart, and authorized them to collect and receive the rents and apply them upon the bond and mortgage, until they should be fully paid and satisfied. At the same time there was also executed a tripartite agreement between Boucicault of the first part, Purssell of the second part and Stuart of the third part in which it was agreed that Stuart should pay the rents of the theatre, as they accrued, during the term of the lease, to the plaintiffs as agents and trustees of Boucicault, until such time as the payments of rent should amount to the sum due upon the bond and mortgage, and that Boucicault should then discharge and satisfy the mortgage. And Purssell agreed that the rents might be so paid and should be regarded as if paid to him and on his account; and it was further agreed that in case Stuart failed to pay the rents reserved in the lease, Purssell should then assign and transfer them and his claim for them to Boucicault, who

was thereupon to indorse the amount of rent, so assigned, upon the bond and mortgage, as a payment thereon.

The controversy between the plaintiffs and Purssell, who alone appealed, mainly grows out of this tripartite agreement, Purssell claiming that certain rents, which were unpaid by Stuart, should have been indorsed upon the mortgage.

The court say: "Upon the facts disclosed at the trial, we are of opinion that this claim is not well founded.

The plaintiffs did not occupy the position of assignees of the mortgage in such a sense that they took subject to any equities or defenses which Purssell had, at the time of the assignment, against Boucicault. The mortgage had no inception in the hands of Boucicault; he advanced no money on it, and there never was a time when he held it as security for any money. At the time it was executed it was not understood that he should loan any money on it, but the understanding was that the loan, on the security of the mortgage, was to be made by the plaintiffs to the mortgagor. The mortgage first had an inception, and became valid as a security, when, with the assignment, it was delivered to the plaintiffs, and they advanced their money upon it. It took the form of a mortgage to Boucicault, simply that the plaintiffs might have his guaranty of payment thereon, and the effect of the whole transaction is not otherwise than it would have been if the mortgage had been executed directly to the plaintiffs, and Boucicault had then guaranteed the payment thereof, or executed his bond as collateral thereto. The plaintiffs loaned their money directly to Purssell, the mortgagor, upon all the papers then delivered to them, to-wit: the bond and mortgage, the assignment, Purssell's written declaration, and his assignment of the rents. Under such conditions, aside from the estoppel furnished by the written declaration, Purssell could not interpose, as a defense to the mortgage, any defense, legal or equitable, which he could have interposed if the mortgage had had an inception in the hands of Boucicault on account of money loaned by him. Purssell borrowed the money of the plaintiffs on these papers, and is bound to pay them unless he has a defense against them.

Besides, the declaration of Purssell, signed and delivered at

the time, estops him now from assailing the mortgage, or interposing any defense, legal or equitable, thereto. Such was the plain intention of the parties, and nothing stands in the way of giving effect to such intention. The plain purpose of the declaration was to convey an assurance to the plaintiffs, upon which they could rely, that the mortgage was a good and valid security for the whole amount thereof.

If the plaintiffs, however, had known of the tripartite agreement, it may be that they would be held to have assented thereto; and it also may be that they could not claim the benefit of the estoppel furnished by the declaration; but it is impossible to perceive how that agreement, unknown to them, and to which they never assented, could in any way affect them. The court, at Special Term, found that the plaintiffs had no knowledge, whatever, of that agreement, and we are of opinion that there was abundant evidence to sustain that finding. The tripartite agreement, therefore, furnishes to the defendant no defense whatever in this action.

The plaintiffs incurred no responsibility in consequence of the assignment to them of the rents to become due under the lease from Purssell to Stuart; they were to take these rents, when paid to them, and apply them on the mortgage; they did not owe Purssell any duty of active diligence in collecting them; they were not bound to take measures to enforce payment of them. They were not requested by the defendants to take any measures to collect them; they did not interpose any obstacles in the way of their collection, and they did nothing whatever to injure or prejudice the rights of Purssell. There was no finding, or request to find, that there was any negligence, or any want of due diligence, on the part of the plaintiffs in collecting the rents, and there were no requests to find that they could have collected the rents, or that Purssell was in any way prejudiced by any negligence on their part. Under such circumstances there is certainly no authority for charging the plaintiffs with rents not received by them."

*Thomas G. Ritch* for appellants.

*John E. Parsons* for respondents.

EARL, J., reads for affirmance.

All concur, except MILLER and TRACY, JJ., absent.

Judgment affirmed.